Hon. Richard A. Jones

# United States District Court
## Western District of Washington
### At Seattle

| | |
|---|---|
| **Claire Allison Hews**, a single individual,<br><br>Plaintiff,<br><br>v.<br><br>**State Farm Mutual Automobile Insurance Company**, a foreign insurance company doing business in King County, State of Washington<br><br>Defendant. | **Civil Action:**<br>**No. 2:15-cv-00834 RAJ**<br><br>**Plaintiff's Motion To Compel Production of Certain Parts Of State Farm's Claim File**<br><br>**Noted For Hearing: 11/06/2015** |

**1. Relief Requested:** Plaintiff requests the Court to order defendant State Farm Mutual Automobile Insurance Company (hereinafter referred to as State Farm) the following pages previously redacted from its initial disclosure and responses to Plaintiff's 1st Discovery Requests: Bates No. 037-051; 047-049 and 051; 0157-0161; 067, 0167-0207.[1]

**2. Statement of Facts**: Plaintiff Claire A. Hews brought suit in King County Superior Court against State Farm for violations of the Insurance Fair Conduct Act, Breach of Contract, Consumer Protection Act violations, Bad Faith, Negligence and violations of the Washington Administrative Code. Ms. Hews received serious personal injuries and damages on

Law Office of John P. Walsh
ATTORNEY AT LAW
POB 22867, Seattle, WA. 98122-0867
Ph.: (206) 393-7787
Fax: (206)641-3253
John.walsh5@comcast.net

October 2, 2014 when the bicycle she was riding was struck from the rear by an underinsured motorist who violated her right of way. Ms. Hews' injuries included:

     a. Traumatic brain injury (TBI);

     b. Left pneumothorax (collapsed lung);

     c. Left pleural contusion;

     d. Non-displaced 6/7 rib fracture;

     e. Soft tissue avulsion at right thumb with tuft fracture; and

     f. Deep left knee abrasion.

(Dkt. No. 1-1).

Defendant removed the case to this court. (Dkt. No. 1). On July 27, 2015 defendant produced a heavily redacted claim file as part of its initial disclosure.[2] Defendant redacted "claim notes" from its production authored by State Farm's principle claims handler and her supervisors.[3] Defendant also redacted multiple injury evaluations made by its adjuster over a seven (7) month period from October 2014 through May 15, 2015.[4] Defendant claims these redactions were subject to work product protections.

Defendant supplied the same responses when answering Plaintiff's 1st Requests for Discovery, i.e. heavily redacting the claims file.

3. ISSUES: Whether the Court should compel production of the previously redacted sections of the claim file, when, as described in State Farm's privilege log, the redactions refer to

---

[1] See declaration of John P. Walsh, **Exhibit A** (defendant's privilege log, the first 4 rows of the grid are the documents that plaintiff is seeking at this time).
[2] Plaintiff had previously served defendant on June 2, 2015 through the office of the insurance commissioner. See **Exhibit B** – Insurance Commissioner's Certificate of Service. The documents served included Plaintiff's 1st Discovery Requests that included a request of State Farm to produce its claim file.
[3] See row 1 of the **Exhibit A** – the privilege log.

PLAINTIFF'S MOTION TO
COMPEL PRODUCTION OF
CERTAIN PORTIONS OF
THE CLAIMS FILE

PAGE -2-

LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
JOHN.WALSH5@COMCAST.NET

claim notes and injury evaluations authored by State Farm employees in the usual and ordinary course of their work as claims adjuster?

A. Answer: Yes. Investigation, evaluation and negotiation are a part of the usual and ordinary course of business for an insurance company. Insurance companies are required to document contemporaneous activity and work performed in the claim file. Plaintiff cannot obtain the same equivalent without incurring a substantial hardship involving time, money and delay. The requested claim file documents go directly to seeking discovery supporting plaintiff's claims that State Farm negligently and in bad faith investigated, evaluated and negotiated Ms. Hews' claim for UIM benefits and failed to timely pay PIP benefits. The claim file documents also seek discovery of documents that would tend to support plaintiff's claims that defendant violated the Unfair Claims Practice regulations under the Washington Administrative Code and violated the Insurance Fair Conduct Act in unreasonably failing to pay and delaying payment of UIM and PIP benefits to Ms. Hews.

**4. EVIDENCE RELIED UPON:** Plaintiff relies on the files and records of this Court, this motion and the declaration of John P. Walsh, including all attachments thereto.

**5. AUTHORITY:**

FRCP 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...[.]" FRCP 26(b)(1). The rule further provides, in pertinent part:

> For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

---

[4] See row 3 and 4 of **Exhibit A.**

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN PORTIONS OF THE CLAIMS FILE**

PAGE -3-

LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
JOHN.WALSH5@COMCAST.NET

Fed. R. Civ. P. 26(b)(1).

The scope of discovery in federal court is indeed very broad. See *Epstein v. MCA*, 54 F.3d 1422, 1423 (9th Cir. 1995). "The Supreme Court has consistently held that the discovery rules should be accorded a 'broad and liberal scope.'" *Contratto v. Ethicon, Inc.*, 225 F.R.D. 93, 595 (N.D. Cal. 2004) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)). The Ninth Circuit has noted, "[w]e start with the premise that pre-trial discovery is ordinarily accorded a broad and liberal treatment." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal citations omitted). "This broad right of discovery is based on the general principle that litigants have a right to every man's evidence ... and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Id.* The general policy, stated succinctly, is as follows: "Unless information is specifically privileged or otherwise protected by statute, it is discoverable under Rule 26(b)(1)." *Contratto*, 225 F.R.D. at 595.

FRCP 26(b)(3) Trial Preparation: Materials, provides:

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

PLAINTIFF'S MOTION TO
COMPEL PRODUCTION OF
CERTAIN PORTIONS OF
THE CLAIMS FILE

PAGE -4-

LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
JOHN.WALSH5@COMCAST.NET

In *Johnson v. Allstate Ins. Co.*, No. C 14-5064, United States District Court, Tacoma, Wa., the court held:

> A party withholding materials under an assertion of privilege has the burden of proving that the withheld materials are actually privileged. Aecon Buildings, Inc. v. Zurich North America, 253 F.R.D. 655, 659-660 (W.D. Wash. 2008). The work-product protection applies to documents and tangible things prepared in anticipation of litigation or for trial. Fed.R.Civ.P. 26(b)(3). Documents prepared in the ordinary course of business are not protected. Fed.R.Civ.P. 26(b)(3), 1970 Advisory Committee Notes. *The Court notes that the investigation and evaluation of claims is part of the regular, ordinary and principal business of insurance companies and its representatives.*

[emphasis added].

Here, Ms. Beadling, State Farms claims adjuster, investigated and evaluated Ms. Hews' claims as part of the regular, ordinary principal business of insurance. Ms. Beadling made contemporaneous notes of her activities working on Ms. Hews' file as she is required to do.

This Court in *Carolina Casualty Ins. Co., Plaintiff, v. Omeros Corp.*, et al., Defendants, No. C12-287RAJ, (United States District Court, W.D. Washington, Seattle. April 12, 2013) cited the Washington Supreme Court case of *Cedell v. Farmers Ins. Co.*, 295 P.3d 239, 246 (Wash. 2013) in deciding whether to compel an insurer to produce its claims file:

> The bulk of the documents on the privilege log assert the attorney-client privilege and work product protection for a host of documents reflecting communications between Omeros representatives and its coverage counsel. Recently, the Washington Supreme Court has clarified the scope of the attorney-client privilege and work product protection for an insurer in a bad faith claim from its insured. Critically, the Court held in *Cedell v. Farmers Ins. Co.*, 295 P.3d 239, 246 (Wash. 2013), that *when an insured brings a bad faith claim, attorney-client privilege and work product protections are presumptively inapplicable to the insurer's claim-adjustment communications*. An insurer may overcome the presumption "by showing its attorney was not engaged in the quasifiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability...." Id. (listing communications regarding "whether or not coverage exists under the law" as an example of privileged communication). The *Cedell* Court

PLAINTIFF'S MOTION TO      PAGE -5-      LAW OFFICE OF JOHN P. WALSH
COMPEL PRODUCTION OF                        A T T O R N E Y  A T  L A W
CERTAIN PORTIONS OF                 POB 22867, SEATTLE, WA.  98122-0867
THE CLAIMS FILE                             PH.: (206) 393-7787
                                           FAX:  (206)641-3253
                                JOHN.WALSH5@COMCAST.NET

was not content to allow the insurer to merely assert claims of privilege, it "entitled" the insurer "to an in camera review of the claims file, and to the redaction of communications *from counsel* that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured." Id.

Carolina Casualty attempts to distinguish Cedell because it arose in the context of a bad faith claim from a first-party insured. The distinction is not persuasive. *The Cedell court grounded its ruling in the quasi-fiduciary duty of an insurer to its insured, along with the public policy interest in regulating the business of insurance. 295 P.3d at 239. The latter consideration is just as important in a third-party claim. As to the former, the "duty of good faith is applicable to both first-party and third-party coverage."* St. Paul Fire & Marine Ins. Co. v. Onvia, 196 P.3d 664, 668 (Wash. 2008).

Carolina Casualty asserts, without providing evidence, that it hired coverage counsel to give coverage advice and to represent it in this lawsuit, not to assist in claims investigation or administration. Not only does it stand by its assertions of privilege, it contends that the in camera review procedure that *Cedell* mandates is not applicable in federal court.

Carolina Casualty's own claim log belies its contention that coverage counsel played no role in claims handling. In 2009, long before it helped Carolina Casualty bring this litigation, coverage counsel played a role in attempts to resolve the Klein suit. He recommended mediation. He concurred in defense counsel's recommendation of a settlement offer to Mr. Klein. This strongly suggests that coverage counsel did not merely advise Carolina Casualty about its coverage obligations. Carolina Casualty's most recent privilege log withholds communications on dates corresponding to the 2009 dates mentioned in the claim log. On this record, Carolina Casualty's assertion of privilege as to these communications is suspect. On the other hand, there is no evidence calling into question its assertions of privilege as to communications with coverage counsel from 2010 to 2012.

*Caroline Casualty Ins. Co. v. Omeros Corp.* , *supra.*

Here, defendant State Farm has redacted and refused to produce those sections of the claim file made before State Farm hired coverage counsel and before hiring Mr. Rogers to defend this lawsuit. State Farm redacted and withheld "claim notes" and "injury evaluations" made over a period of seven (7) months. Plaintiff claims, in part, that State Farm unreasonably undervalued Ms. Hews' claim for UIM benefits and unreasonably delayed payment of both UIM and PIP benefits. The injury evaluations contained in the claim file likely will provide the best evidence of how State Farm evaluated Ms. Hews' injuries and medical bills including whether a

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN PORTIONS OF THE CLAIMS FILE

PAGE -6-

LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
JOHN.WALSH5@COMCAST.NET

proper and timely investigation was performed and whether State Farm unreasonably compelled its insured to institute litigation to obtain benefits and otherwise acted in bad faith. There can be no better evidence than the contemporaneous notes made in the claim file by the persons charged with the responsibility to evaluate Ms. Hews' entitlement to benefits.

In THE CEDELL PRESUMPTION: DISCOVERY OF THE INSURER'S CLAIM FILE IN INSURANCE BAD FAITH LITIGATION IN WASHINGTON, Gonzaga Law Review Vol 49:3 (2014) at 507[5] the author notes:

> As the primary documentation of the insurer's basis for its actions on a claim, the claim file will be primary evidence of the reasonableness, completeness, and timeliness of the insurer's handling of the claim. As a consequence, "[t]he insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith."28

The author also noted:

> In Cedell, the court explained that the insurer would not be able to assert privilege with respect to "the quasi-fiduciary tasks of investigating and evaluating or processing the claim."84 Because of the insurer's duty to hold the insured's interests equal to its own with respect to these tasks, Cedell adopted a presumption "that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant."85

*Id.* at p. 513-514.

> An insurer's investigation and decision-making on a claim would normally be discoverable under all of these principles: it constitutes a factual investigation not occurring in an attorney-client relationship; it is subject to examination by the Insurance Commissioner; and it occurs in the ordinary course of business. An insurer's engagement of an attorney in this process does not change the analysis.

*Id.* at p. 517.

---

[5] A copy of this excellent article is attached to this motion for the court's easy reference.

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN PORTIONS OF THE CLAIMS FILE

PAGE -7-

LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
JOHN.walsh5@comcast.net

Here, there is no indication of any attorney involvement during the 7 month period that State Farm's claims people were making claim notes in the file. The claim notes were subject to examination by the Insurance Commissioner and occurred in the ordinary course of business. The same holds true for State Farms claims personnel participating in the injury evaluations.

> Cedell is the leading case in Washington on the discovery of an insurance claim file in bad faith litigation. First, it creates a presumption that the insurer may not claim the attorney-client privilege as to the claim file against the insured. To overcome the presumption, the insurer must show that its attorney was not engaged in quasi-fiduciary tasks relating to the insurance claim. This rule is essentially a clarification of law that pre-existed Cedell. Before Cedell, the burden of establishing a privilege rested with the party asserting it. Cedell goes further and places the burden on the insurer of proving that an attorney involved in an insurance claim was not engaged in claims adjusting activities and was solely providing legal advice to the insurer. While no Washington case made this explicit before Cedell, the burden of overcoming the Cedell presumption is consistent with, and arguably implicit in, the well-settled rules that the privilege is narrow and that an insurer asserting the privilege has always had the burden of proving that it applies.
> Second, Cedell joins a number of jurisdictions in holding that upon demonstration by the insured of a foundation for a bad faith claim to proceed, the attorney-client privilege is deemed waived. Cedell supports the conclusion that in Washington, an insurer that is the subject of a bad faith claim should expect to disclose to the insured the entire course of its handling of the underlying insurance claim, and will have only a very limited ability to claim that disclosure of its activities may be withheld from the insured based on the involvement of counsel in the claims process.

*Id.* at 533.

Here, State Farm has the obligation and burden to show its attorneys were involved in creating the claims notes and injury evaluations. If State Farm shows that its counsel were involved in creating the claim notes and injury evaluations then its counsel must be considered engaging in quasi-fiduciary tasks of claims adjusting. State Farm's privilege log does not meet its burden of showing attorney involvement in creating the portion of the claim file that plaintiff is presently seeking in discovery. The claim notes were prepared in the ordinary course of handling

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN PORTIONS OF THE CLAIMS FILE       PAGE -8-       LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
JOHN.WALSH5@COMCAST.NET

Ms. Hews' claim and were prepared by its claims personnel. There is not indication that the claim notes or injury evaluations include the mental impressions of its attorneys or legal advise of its attorneys with regard to State Farm's legal liability. Attorney-client privilege and work product objections on their face are not relevant to the redacted documents per the privilege log and should be produced.

Dated this 22nd day of October 2015.

LAW OFFICE OF JOHN P. WALSH

_____

John P. Walsh, WSBA # 12437
Attorney Ms. Hews, Plaintiff

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN PORTIONS OF THE CLAIMS FILE

PAGE -9-

LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
JOHN.WALSH5@COMCAST.NET

Certificate of Service

I certify under penalty of perjury under the laws of the State of Washington that I served the foregoing on Counsel for Defendant to Michael Rogers via email to mrogers@rmlaw.com and by First Class Mail, to Michael S. Rogers, Reed McClure, 1215 4th Ave., Ste. 1700, Seattle, WA 98161-1087.

on this 22nd day of October, 2015.

_____

John P. Walsh

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF CERTAIN PORTIONS OF THE CLAIMS FILE

PAGE -10-

LAW OFFICE OF JOHN P. WALSH
ATTORNEY AT LAW
POB 22867, SEATTLE, WA. 98122-0867
PH.: (206) 393-7787
FAX: (206)641-3253
John.walsh5@comcast.net

BIRK (DO NOT DELETE)                                                                                        6/6/2014 9:49 AM

THE *CEDELL* PRESUMPTION: DISCOVERY OF THE INSURER'S CLAIM
FILE IN INSURANCE BAD FAITH LITIGATION IN WASHINGTON

Ian S. Birk*

TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................504
II.  RELEVANCE OF THE CLAIM FILE TO INSURANCE DISPUTES.................505
     A.   *The Right to Discovery of Relevant Information*..........................505
     B.   *Limitations on the Right to Discovery*.........................................507
III. STATUS OF THE CLAIMANT ....................................................508
     A.   *First Party Claimant*....................................................509
     B.   *Third Party Claimant*...................................................510
     C.   *Underinsured or Uninsured Motorist (UIM) Claimant* ...............511
IV.  THE ATTORNEY-CLIENT PRIVILIGE AND WORK PRODUCT
     DOCTRINE AS APPLIED TO THE INSURANCE CLAIM FILE ....................512
     A.   *The* Cedell *Presumption that the Insurer May Not Assert the
          Privilege Against the Insured*........................................................513
          1.   Claims adjusting, even when performed by counsel, is not
               privileged. ..................................................................................514
          2.   The *Cedell* presumption is consistent with the general law
               of the attorney-client privilege.................................................515
          3.   Co-mingling quasi-fiduciary tasks and counseling the
               insurer ........................................................................................518
          4.   *Cedell* in third party and UIM settings ..................................521
     B.   *Piercing the Attorney-Client Privilege* ........................................522
          1.   The crime-fraud exception to the attorney-client privilege
               in insurance bad faith actions................................................522
          2.   Attorney's mental impressions at issue.................................526
     C.   *Work Product*..............................................................................527

     *     Ian S. Birk is a partner at the Seattle, Washington office of Keller Rohrback
L.L.P. His practice emphasizes the representation of policyholders and other insureds in
disputes with insurance carriers, among other civil matters. Before entering private practice,
he clerked at the Washington Supreme Court. He received his undergraduate and law
degrees from the University of Washington. The views expressed in this article are the
author's own.

BIRK(DO NOT DELETE)                                                                    6/6/2014 9:49 AM

504                        GONZAGA LAW REVIEW                      [Vol. 49:3

     1.  Claim file documents created in the ordinary course of
        busines are not work product. ................................................ 528
     2.  The substantial need exception ............................................ 529
   D.  In Camera *Review* ........................................................................ 531
V.  CONCLUSION ................................................................................ 533

## I. INTRODUCTION

In *Cedell v. Farmers Ins. Co. of Wash.*,[1] the Washington Supreme Court clarified the standards that govern the right of an insured to obtain an insurance company's claim file under the civil discovery rules. At issue in *Cedell* was the extent to which the insurer was entitled to withhold portions of the claim file based primarily on the attorney-client privilege. *Cedell* does three things. First, it clarifies the extent to which an insurer may assert the attorney-client privilege against its own insured, adopting a presumption that the privilege does not apply as to the insured.[2] Second, it clarifies the circumstances in which the privilege may be pierced, even if the insurer would otherwise have been entitled to assert it.[3] And third, it establishes a procedure for *in camera* review by the court when an insurer seeks to withhold a portion of the claim file.[4] Some courts have expressed the view that *Cedell* broadened the discovery to which insureds are entitled.[5] This may be so. This article argues that if *Cedell* broadened the scope of discovery, it did so by giving effect to two settled principles: (1) the attorney-client privilege is a narrow privilege, strictly limited to the purposes for which it exists; and (2) the party invoking the privilege bears the burden of establishing that it applies. The *Cedell* presumption that the insurer may not assert the attorney-client privilege against the insured gives effect to these principles in the context of insurance disputes.

---

    1.     295 P.3d 239, 246 (Wash. 2013).

    2.     *Id.*

    3.     *Id.*

    4.     *Id.*

    5.     Everest Indem. Ins. Co. v. QBE Ins. Co., No. 2:13-cv-00828-RSM, 2013 WL 5885277, at *5 (W.D. Wash. Oct. 31, 2013) ("Several district courts in this circuit have interpreted *Cedell* as broadening the scope of discoverable information in insurance disputes."); Phila. Indem. Ins. Co. v. Olympia Early Learning Ctr., No. C12-5759 RBL, 2013 WL 3338503 at *4 (W.D. Wash. July 2, 2013) ("If nothing else, it is now clear that the scope of discovery in first party bad faith actions is very broad, and the attorney-client privilege and work product doctrine are less difficult to overcome now than they were prior to the opinion.").

BIRK (DO NOT DELETE)                                    6/6/2014 9:49 AM

2013/14]              THE *CEDELL* PRESUMPTION                    505

## II. RELEVANCE OF THE CLAIM FILE TO INSURANCE DISPUTES

Every insurer is required to maintain a claim file when adjusting an insurance claim. In Washington, this requirement is imposed by section 284-30-340, which provides that an insurer's claim files "must contain all notes and work papers pertaining to the claim in enough detail that pertinent events and dates of the events can be reconstructed." [6] The same regulations provide that an insurer must investigate each claim.[7] These regulatory requirements are based on the Unfair Property/Casualty Claims Settlement Practices Model Regulation,[8] the product of model legislation governing insurance claims handling promulgated by the National Association of Insurance Commissioners starting in the 1970s.[9] The Washington Supreme Court has explained that the insurer's investigation is one of the benefits the insured is entitled to as consideration for payment of the insurance premium.[10] It is principally in the claim file that the activities and results of the investigation will be found.

### A. *The Right to Discovery of Relevant Information*

The term "insurance bad faith" is used here in a broad sense to refer to a claim asserted by a claimant on an insurance policy to recover damages arising out of the insurer's handling of the underlying insurance claim, typically along with coverage due under the policy. It is routine in such cases for the claimant to request production of the insurer's claim file. And, as far as the majority of the claim file goes, it is routine for the insurer to produce it. Washington Superior Court Civil Rule (CR) 26(b)(1) permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[11] The relevance standard of CR 26 is "much broader than the standard

---

6.    WASH. ADMIN. CODE § 284-30-340 (1978).

7.    *See* WASH. ADMIN. CODE § 284-30-330(3) (1978) (defining as "unfair or deceptive acts or practices of the insurer," *inter alia*, the failure "to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies"); WASH. ADMIN. CODE § 284-30-330(4) (1978) (same as to "[r]efusing to pay claims without conducting a reasonable investigation"); and WASH. ADMIN. CODE § 284-30-370 (1978) (requiring generally that insurer complete its "investigation" within 30 days after notification of claim).

8.    NAT'L ASS'N OF INS. COMM'RS, UNFAIR PROPERTY/CASUALTY CLAIMS SETTLEMENT PRACTICES MODEL REGULATION 902-4 (1997), *available at* http://www.naic.org/store/free/MDL-902.pdf.

9.    *See* ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW § 7.7(d) at 873 (West Pub. Co. 1988).

10.    Coventry Assocs. v. Am. States Ins. Co., 961 P.2d 933, 938 (Wash. 1998).

11.    CR 26(b)(1).

BIRK (DO NOT DELETE)                                                    6/6/2014 9:49 AM

506                     GONZAGA LAW REVIEW                    [Vol. 49:3

required under the evidence rules for admissibility at trial."[12] The fact that evidence sought in discovery would not be admissible at trial does not bar discovery "so long as 'the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'"[13] In Washington, the "right of discovery authorized by the civil rules" is part of the constitutional right of access to the courts.[14] Indeed, "[t]he right of discovery and the rules of discovery are integral to the civil justice system."[15]

The claim file is relevant to claims typically advanced in insurance bad faith litigation in numerous ways. Insofar as the claim file reflects the "pertinent events and dates of the events" in the handling of an insurance claim as required by section 284-30-340, it forms basic evidence of such things as the nature and extent of the insurer's activities in investigating the claim, the identity of the claims personnel who were assigned, and the substance of any determinations that the insurer made.[16] This evidence bears directly on bad faith litigation. Under Washington's Insurance Fair Conduct Act (IFCA),[17] liability runs to a claimant who was "unreasonably" denied a claim for coverage or payment of benefits.[18] A claimant may establish bad faith under Washington common law by showing that an insurer refused to extend coverage "without reasonable justification."[19] This may be done, for example, by showing that a denial of coverage based on "suspicion and conjecture" or based on "a supposed defense which a reasonable investigation would have proved to be without merit."[20] A claimant may establish bad faith by establishing that the insurer's conduct was "unreasonable, frivolous, or unfounded."[21] This may be done, for example, by showing that an investigation was tardy,[22] that an insurer failed to inform the insured of available benefits,[23] or that offers were unreasonably low.[24] A claimant may establish a per se unfair trade practice under Washington's Consumer Protection Act (CPA)[25] by

---

12.    Barfield v. City of Seattle, 676 P.2d 438, 442 (Wash. 1984).

13.    *Id.* at 443 (quoting CR 26(b)(1)).

14.    Putman v. Wenatchee Valley Med. Ctr., 216 P.3d 374, 376 (Wash. 2009) (quoting Doe v. Puget Sound Blood Ctr., 819 P.2d 370, 374 (Wash. 1991)).

15.    Lowy v. PeaceHealth, 280 P.3d 1078, 1082 (Wash. 2012).

16.    WASH. ADMIN. CODE § 284-30-340 (2014).

17.    2007 Wash. Sess. Laws 2.

18.    WASH. REV. CODE § 48.30.015(1) (2007).

19.    Indus. Indem. Co. of the Nw. v. Kallevig, 792 P.2d 520, 526 (Wash. 1990).

20.    *Id.*

21.    Smith v. Safeco Ins. Co., 78 P.3d 1274, 1277 (Wash. 2003).

22.    Van Noy v. State Farm Mut. Auto. Ins. Co., 16 P.3d 574, 580 (Wash. 2001).

23.    Anderson v. State Farm Mut. Ins. Co., 2 P.3d 1029, 1031 (Wash. Ct. App. 2000).

24.    Morella v. Safeco Ins. Co. of Ill., No. C12-0672RSL, 2013 WL 1562032 at *4 (W.D. Wash. Apr. 12, 2013).

25.    1961 Wash. Sess. Laws 1956, as amended; *see* WASH. REV. CODE § 19.86.090

2013/14]              THE *CEDELL* PRESUMPTION              507

showing a violation of section 284-30-330, which sets forth minimum requirements in handling insurance claims.[26] A claimant may also recover for negligence in the insurer's handling of a claim.[27] As the primary documentation of the insurer's basis for its actions on a claim, the claim file will be primary evidence of the reasonableness, completeness, and timeliness of the insurer's handling of the claim. As a consequence, "[t]he insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith."[28]

### B.  *Limitations on the Right to Discovery*

While discovery of the claim file is a routine part of a bad faith case, disputes about the production of component parts of the claim file arise with some frequency. Courts have approached the issue differently depending on whether the requesting party is a first party claimant,[29] a third party claimant,[30] or an uninsured/underinsured motorist (UIM) claimant.[31] In the cases discussed in this article, insurers have sought to withhold or redact parts of the claim file on the ground that they reflect privileged attorney-client communications,[32] that they constitute protected work product,[33] or both.

*Attorney-Client Privilege*. The attorney-client privilege in Washington provides that "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment."[34] The statute applies to "all communications and advice between an attorney and client, including from the attorney to the client."[35] The privilege "extends to documents which contain a privileged communication."[36]

*Work Product*. The work product doctrine stems from *Hickman v. Taylor*,[37]

---

(creating civil action for damages); Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 535 (Wash. 1986) (defining elements of private action for damages).

26.   Indus. Indem. Co. of the Nw. v. Kallevig, 792 P.2d 520, 529 n.8 (Wash. 1990).

27.   First State Ins. Co. v. Kemper Nat'l Ins. Co., 971 P.2d 953, 959 (Wash. Ct. App. 1999).

28.   Cedell v. Farmers Ins. Co. of Wash., 295 P.3d 239, 244–45 (Wash. 2013).

29.   *Id.* at 244–45.

30.   Heidebrink v. Moriwaki, 706 P.2d 212, 217 (Wash. 1985).

31.   Barry v. USAA, 989 P.2d 1172, 1176 (Wash. Ct. App. 1999).

32.   *Cedell*, 295 P.3d at 242–43.

33.   *Barry*, 989 P.2d at 1177.

34.   WASH. REV. CODE § 5.60.060(2)(a) (2012).

35.   Zink v. City of Mesa, 256 P.3d 384, 403 (Wash. Ct. App. 2011).

36.   Pappas v. Holloway, 787 P.2d 30, 34 (Wash. 1990).

37.   329 U.S. 495, 511 (1947).

BIRK(DO NOT DELETE)                                                                           6/6/2014 9:49 AM

508             GONZAGA LAW REVIEW             [Vol. 49:3

and is now codified in CR 26(b)(4) in Washington and in Fed. R. Civ. P. 26(b)(3) in federal court. CR 26(b)(4) provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.[38]

"The work product doctrine provides a qualified immunity from discovery."[39] When a party can show that a document was prepared in anticipation of litigation, another party can discover the document only on a showing of substantial need.[40] "The mental impressions of the attorney and other representatives of a party are absolutely protected, unless their mental impressions are directly at issue."[41] The work product doctrine will not protect documents prepared in the regular course of business.[42]

These objections to discovery are subject to significant limitations, however, when applied to an insurance claim file. The remainder of this article will address the status of the insurance bad faith claimant as it bears on the discovery of the claim file; the basis for insurers' objections to discovery of the claim file; and the limitations on those objections.

### III. STATUS OF THE CLAIMANT

The scope of a claimant's right to discover the claim file varies depending on whether the plaintiff is a first party claimant, a third party claimant, or a UIM claimant. In general, a first party claimant has the strongest right to discovery of the claim file. A third party claimant, at least in the absence of an assignment of an insured defendant's first party rights,[43] has more limited rights with respect to

---

38.    CR 26(b)(4).

39.    Harris v. Drake, 99 P.3d 872, 874 (Wash. 2004).

40.    *Id*.

41.    Limstrom v. Ladenburg, 963 P.2d 869, 877 (Wash. 1998) (citing Pappas v. Holloway, 787 P.2d 30, 38-39 (Wash. 1990)).

42.    Barry v. USAA, 989 P.2d 1172, 1177 (Wash. Ct. App. 1999).

43.    *See generally* Besel v. Viking Ins. Co. of Wis., 49 P.3d 887, 890-891 (Wash. 2002).

2013/14]    THE *CEDELL* PRESUMPTION    509

the defendant's liability carrier. A UIM claimant occupies a unique position, sharing features of both first party and third party settings.

## A. *First Party Claimant*

IFCA creates a claim for a *first party claimant,* which the law defines as: "an individual, corporation, association, partnership, or other legal entity asserting a right to payment as a covered person under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such a policy or contract."[44] The fair claims handling regulations contain a nearly identical definition.[45] This definition broadly encompasses the range of parties who are entitled to benefits under an insurance policy beyond merely the premium-paying policyholder.[46] *Couch on Insurance* explains: "The 'insured' under a contract of insurance is the person or entity that will receive a certain sum upon the happening of a specified contingency or event."[47] "The insured may be named within the policy or may be identified by description such as 'employee,' 'dependent,' 'resident' or 'member' of a household, 'owner,' or 'eligible debtor.'"[48]

The definition of first party claimant recognizes that there is a broad range of persons entitled to benefits under insurance policies. One court has described this "spectrum" as including, on one end, "the purchaser of the policy and the named insured," on the other end the "incidental beneficiaries and beneficiaries of a group policy," and in between "the remainder of the classes of insureds: named and unnamed additional insureds, third-party beneficiaries, fleet policy beneficiaries, etc."[49] The term *additional insured* lacks formal definition in the

---

44.    Wash. Rev. Code § 48.30.015(4) (2007).

45.    *See* Wash. Admin. Code § 284-30-320(6). There are two differences between the definitions of "first party claimant" appearing in IFCA and in the regulations. First, IFCA refers to a claimant asserting "a right to payment as a covered person," whereas the regulations refer to a claimant asserting "a right as a covered person to payment." Second, IFCA uses the word "such" in referring to "the contingency or loss covered by such a policy or contract," whereas the regulations do not. These differences appear to be stylistic only.

46.    *Id*.

47.    Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 40:1 (West 2011).

48.    *Id*. § 40:3. *Couch* makes the further point that "[i]f the description of the insured within the policy is sufficient to identify who is protected, the insured does not have to be specifically named." *Id*. Washington employs a similarly liberal standard when there is a question as to the identity of the insurer, holding, where an insurer disputed that it was properly named as a defendant, that "when a party is incorrectly named in a lawsuit, dismissal is not the automatic remedy; rather the primary consideration is whether the party has been prejudiced." Prof'l Marine Co. v. Underwriters at Lloyd's, 77 P.3d 658, 664 (Wash. Ct. App. 2003).

49.    Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am., 659 So.2d 51, 58, 60

BIRK(DO NOT DELETE)                                                    6/6/2014 9:49 AM

insurance field.[50] Rather, the terms of the insurance policy determine the benefits it affords. The Insurance Services Office[51] commercial general liability form describes classes of persons whose identity may differ from the individual who procured the insurance. Likewise, in the property context, a policy may extend coverage not merely to the property of the party procuring the insurance, but also to property of others, such as property of an insured business's employee.[52] In all these cases the plaintiff asserts a right to payment as a covered person, and so is a first party claimant.[53]

## B.  *Third Party Claimant*

A *third party claimant* is defined as "any individual, corporation, association, partnership or other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract of the insurer."[54] In *Tank v. State Farm Fire & Casualty Co*., the Washington Supreme Court held that a third party claimant may not bring a direct action against an insured defendant's insurance carrier.[55] In *Tank*, Walker sued Tank for injuries sustained in an altercation.[56] Tank's insurer, State Farm, defended Tank, but reserved the right to deny coverage for Walker's claim based on an exclusion for intentional acts.[57] Walker recovered a judgment against Tank (based on intentional conduct) and asserted claims against Tank's insurer, State Farm.[58] Walker's claim was based on

(Ala. 1995) (construing an Alabama statute requiring delivery of an insurance policy to anyone "entitled thereto"); WASH. REV. CODE § 48.18.260(1) (showing substantial similarities to the statute construed in *Brown*).

50.    DONALD S. MALECKI, ET AL., THE ADDITIONAL INSURED BOOK 84 (Int'l Risk Mgt. Inst., 5th ed. 2004).

51.    "I[nsurance] S[ervices] O[ffice] is an umbrella rating organization, which is owned by a number of insurance companies. ISO provides various services to its members and subscribers including drafting and filing of insurance forms with state insurance departments, which it can do on behalf of its member companies if given authority by the members to do so." Gerrish Corp. v. Universal Underwriters Ins. Co. Kansas City, Mo., 754 F. Supp. 358, 362 (D. Vt. 1990).

52.    Clausen v. Columbia Nat'l Ins. Co., 510 N.W.2d 399, 404 (Neb. Ct. App. 1993) ("The policy plainly did not contemplate that only the owner's property would be covered, since this provision was specifically intended to cover personal property of others.").

53.    *See, e.g*., Rees v. Viking Ins. Co., 892 P.2d 1128, 1130 (Wash. Ct. App. 1995); Abbott v. Pub. Emps. Mut. Ins. Co., 748 P.2d 270, 271 (Wash. Ct. App. 1988).

54.    WASH. ADMIN. CODE § 284-30-320(14) (1978).

55.    715 P.2d 1133, 1140 (Wash. 1986).

56.    *Id*. at 1135.

57.    *Id*.

58.    *Id*.

BIRK (DO NOT DELETE)                                                    6/6/2014 9:49 AM

2013/14]              THE *CEDELL* PRESUMPTION                  511

section 48.30.010, which provides that "[n]o person engaged in the business of insurance" shall engage in specified "unfair methods of competition or in unfair or deceptive acts or practices."[59] This statute in turn provides the statutory authority for the fair claims handling regulations adopted by the Insurance Commissioner.[60] However, the supreme court held, "The enforcement of these rules on behalf of third parties should be the province of the Insurance Commissioner, not individual third party claimants."[61] *Tank* therefore limits the rights of a third party claimant[62] against the insurer of a defendant that the third party claimant has sued.[63]

### C.  *Underinsured or Uninsured Motorist (UIM) Claimant*

Insurers selling automobile liability policies in Washington must offer uninsured or underinsured motorist (UIM)[64] coverage as part of the policy.[65] In

---

59.    WASH. REV. CODE § 48.30.010 (2013).

60.    715 P.2d at 1140.

61.    *Id*.

62.    The term "third party claimant" in the insurance context should not be conflated with the principle of third party beneficiaries under general contract law. *Compare* Gould v. Mut. Life Ins. Co., 683 P.2d 207, 208 (Wash. Ct. App. 1984), *overruled on other grounds as stated in* Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 87 P.3d 774, 787 (Wash. Ct. App. 2004) (holding that a decedent's surviving spouse was a third party beneficiary of a life insurance contract owned by the decedent, and that the surviving spouse could bring an action against the insurer for the wrongful refusal to pay the claim); *with Tank*, 715 P.2d at 1141 ("The *Gould* court held that a widow, as third party beneficiary under her husband's life insurance policy, could bring a CPA action against the insurer for wrongful refusal to pay a claim."); Thus, *Tank* explicitly recognized that its holding with respect to third party claimants did not apply to persons, such as the beneficiary of a life insurance contract, who might be classified as third party beneficiaries in the language of contract law. A person who is a third party beneficiary in the sense of contract law may in fact be a first party claimant on an insurance policy. *See* Goff v. Penn Mut. Life Ins. Co., 729 S.E.2d 890, 895–96 (W.Va. 2012) (holding that beneficiary of life insurance contract was entitled to pursue bad faith claims as a first party claimant).

63.    *Tank* was careful to hold only that *enforcement* of the fair claims handling regulations in the third party context falls to the Insurance Commissioner, rather than third party claimants. That is not to say that the fair claims handling regulations do not *apply* to insurers adjusting third party claims. The fair claims handling regulations of WASH. ADMIN. CODE § 284-30-330 apply generally to benefit "claimant[s]," without qualifying whether only first or third party claimants are intended. THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 3.1 at 3-1 *et seq*. Dussault *ex rel*. Walker-Van Buren v. Am. Int'l Grp., Inc., 99 P.3d 1256, 1260 (Wash. Ct. App. 2004) (noting that the holding of *Tank* does not bar a third party claimant from pursuing claims against the insurer of a defendant for independently tortious conduct).

64.    Sometimes the abbreviation "UM" has been used to refer to uninsured motorist coverage, whereas "UIM" refers to underinsured motorist coverage. This article will use

BIRK(DO NOT DELETE)                                                          6/6/2014 9:49 AM

general, UIM coverage is available when the available liability coverage is insufficient to cover the UIM insured's damages arising out of a motor vehicle claim.[66] The UIM insured looks to the UIM carrier to pay the insured's damages in excess of the available liability coverage. A UIM insured is a first party claimant[67] and is entitled to pursue bad faith claims arising out of the UIM insurer's wrongful failure to extend benefits.[68] Similarly, a UIM carrier's violation of the fair claim handling regulations is actionable by the UIM insured.[69]

However, unlike other first party claims, a UIM claim has an adversarial component to it, because "the UIM carrier is entitled to pursue all the defenses against the UIM claimant that could have been asserted by the tortfeasor."[70] "[T]he insurance carrier stands in the shoes of the uninsured motorist to the extent of the carrier's UIM policy limits."[71] As a result, "the provision of UIM coverage is by nature adversarial."[72] The adversarial component of UIM claims limits the right to discovery of the claim file that a first party claimant otherwise has.

## IV.  THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE AS APPLIED TO THE INSURANCE CLAIM FILE

*Cedell* exemplifies the discovery issue that arises when an insurer seeks to withhold a portion of the claim file on the basis of the attorney-client privilege or the work product doctrine. In *Cedell*, the insured's home was damaged by fire.[73] The insurer believed that the insured's girlfriend, who reported the fire, but was not an insured, made inconsistent statements.[74] The insurer hired an attorney to

---

"UIM" for simplicity.

65.    WASH. REV. CODE § 48.22.030(2) (2009).

66.    WASH. REV. CODE § 48.22.030(1)-(2).

67.    Rees v. Viking Ins. Co., 892 P.2d 1128, 1130 (Wash. Ct. App. 1995) ("UIM coverage is first party coverage. There is a contractual relationship between the UIM carrier and its insured that is not present with third party liability coverage.").

68.    Ellwein v. Hartford Accident & Indem. Co., 15 P.3d 640, 647 (Wash. 2001), overruled in part on other grounds by Smith v. Safeco Ins. Co., 78 P.3d 1274, 1278 (Wash. 2003).

69.    Anderson v. State Farm Mut. Ins. Co., 2 P.3d 1029, 1034 (Wash. Ct. App. 2000) (failure to disclose UIM coverage).

70.    Barry v. USAA, 989 P.2d 1172, 1176 (Wash. Ct. App. 1999).

71.    Dayton v. Farmers Ins. Grp., 876 P.2d 896, 898 (Wash. 1994).

72.    *Barry*, 989 P.2d at 1176.

73.    Cedell v. Farmers Ins. Co. of Wash., 295 P.3d 239, 242 (Wash. 2013).

74.    *Id*.

2013/14]                    THE *CEDELL* PRESUMPTION                     513

assist in making a coverage determination.[75] The attorney examined the insured and his girlfriend under oath, sent a letter stating that the insurer might deny coverage, and sent another letter extending an offer on the claim.[76] When the insured later brought a bad faith action, the insurer produced a redacted claim file, asserting that the redactions in the claim file reflected the insurer's communications with its attorney, which were privileged.[77] The attorney-client privilege constitutes state substantive law.[78] As a result, *Cedell* applies in federal court when Washington law supplies the rule of decision.[79]

### A. *The* Cedell *Presumption that the Insurer May Not Assert the Privilege Against the Insured*

In *Cedell*, the court established a presumption that the claim file is not privileged.[80] In first party bad faith claims, "unique considerations arise" because "the insurer has a quasi-fiduciary duty to act in good faith toward its insured."[81] This "quasi-fiduciary duty" imposes on the insurer "a broad obligation of fair dealing . . . and a responsibility to give equal consideration to the insured's interests."[82] As a result, "'it is a well-established principle in bad faith actions brought by an insured against an insurer under the terms of an insurance contract that communications between the insurer and the attorney are not privileged with respect to the insured.'"[83] In *Cedell*, the court explained that the insurer would not be able to assert privilege with respect to "the quasi-fiduciary tasks of investigating and evaluating or processing the claim."[84] Because of the insurer's duty to hold the insured's interests equal to its own with respect to these tasks,

---

75.   *Id*.

76.   *Id*.

77.   *Id*. at 242–43.

78.   HSS Enters. v. Amco Ins. Co., No. C06-1485-JPD, 2008 WL 163669, at *3 (W.D. Wash. Jan. 14, 2008) (citing Lexington Ins. Co. v. Swanson, 240 F.R.D. 662, 666 (W.D. Wash. 2007)).

79.   Philadelphia Indemnity Ins. Co. v. Olympia Early Learning Ctr., No. C12-5759 RBL, 2013 WL 3338503, at *3 (W.D. Wash. 2013 July 2, 2013).

80.   *Cedell*, 295 P.3d at 246.

81.   *Id*. at 244.

82.   Tank v. State Farm Fire & Cas. Co., 715 P.2d 1133, 1136 (Wash. 1986) (quotation omitted); St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 196 P.3d 664, 667 n.3 (Wash. 2008) (showing that it is the insurer's duty is to give the insured equal consideration, but not elevate the insured's interests above its own, that the duty is a "quasi-fiduciary" duty rather than an unqualified fiduciary duty).

83.   *Cedell*, 295 P.3d at 245 (quoting Barry v. USAA, 989 P.2d 1172, 1175–76 (Wash. Ct. App. 1999)).

84.   *Cedell*, 295 P.3d at 246.

BIRK(DO NOT DELETE)                                                6/6/2014 9:49 AM

514               GONZAGA LAW REVIEW          [Vol. 49:3

*Cedell* adopted a presumption "that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant."[85] Although *Cedell* was concerned with the discovery of documents, courts applying *Cedell* have applied the same analysis to requests for discovery through depositions of the attorneys involved in the claims process.[86]

> 1. Claims adjusting, even when performed by counsel, is not privileged.

Even before *Cedell*, it was settled law that an insurer's investigation of a loss was not privileged, even when the insurer employed an attorney to handle the investigation. This followed from the longstanding law of the attorney-client privilege. "The attorney-client privilege is a narrow privilege and protects only 'communications and advice between attorney and client;' [sic] it does not protect documents that are prepared for some other purpose than communicating with an attorney."[87] The purpose of the attorney-client privilege is "to allow the client to communicate freely with an attorney without fear of compulsory discovery."[88] Because the privilege "sometimes results in the exclusion of evidence otherwise relevant and material, and may thus be contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts," the privilege is "limited to the purpose for which it exists."[89]

Because documents prepared for some "other purpose" than attorney communications are not privileged, it follows that to the extent the claim file documents the insurer's investigation and adjusting of the loss, it is not privileged. In *HSS Enters. v. Amco Ins. Co.*, the insurer hired a law firm to investigate and adjust a fire loss.[90] The court concluded that the insurer could not claim attorney-client privilege with respect to the law firm's investigation and adjusting activities.[91] The court explained:

---

85.   *Id.*

86.   Everest Indem. Ins. Co. v. QBE Ins. Corp., No. 2:13-cv-00828-RSM, 2013 WL 5885277, at *6 (W.D. Wash. Oct. 31, 2013) (allowing deposition of attorney to whom insurer delegated coverage determination pursuant to *Cedell*); Shaw Grp. v. Zurich Am. Ins. Co., No. 12-257-JJB-RLB, 2014 WL 199626, at *2 (M.D. La. Jan. 15, 2014) (applying Washington law and analyzing request to depose in-house attorney employed by insurer pursuant to *Cedell*).

87.   Hangartner v. City of Seattle, 90 P.3d 26, 32 (Wash. 2004) (quoting Kammerer v. W. Gear Corp., 635 P.2d 708, 711 (Wash. 1981)).

88.   Dietz v. Doe, 935 P.2d 611, 615 (Wash. 1997).

89.   *Id.*

90.   No. C06-1485-JPD, 2008 WL 163669, at *1 (W.D. Wash. 2008).

91.   *Id.* at *4.

BIRK (DO NOT DELETE)                                                    6/6/2014 9:49 AM

2013/14]                    THE *CEDELL* PRESUMPTION                         515

> In the insurance context, the question of whether a communication falls within the attorney-client privilege can often be a difficult one because of the investigatory nature of the insurance business. The line between what constitutes claim handling and the rendition of legal advice is often more cloudy than crystalline. However, it is obvious that the claim file and related material in an insurance bad faith action contains critical evidence regarding the investigation, analysis, and ultimate decision regarding an insured's claim . . . . Accordingly, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply . . . . The public policy reason behind this conclusion is that insurance companies should not be permitted to insulate the factual findings of a claims investigation by the involvement of an attorney to perform, or help perform, such work.[92]

While *HSS Enterprises* established a clear rule that claims handling activities, as opposed to legal advice, would not be privileged, as *HSS Enterprises* itself acknowledged, distinguishing the two may be less than clear. Certainly it should not be enough to demonstrate that an attorney's involvement represents the giving of legal advice, rather than claims handling, merely because a legal question arises in relation to coverage. Part of the insurer's responsibility to the insured is to explain the basis for any denial of an insurance claim "in relation to . . . applicable law."[93] Both the insurer's consideration of such a legal question and its explanation, therefore, should be viewed as the ordinary course of handling an insurance claim.

2.  The *Cedell* presumption is consistent with the general law of the attorney-client privilege.

The analysis in *Cedell* is consistent with that in *HSS Enterprises*.[94] In *Cedell*, while the court found that the insurer retained counsel to provide advice on coverage, it also found that the attorney's role was not limited to providing legal advice, explaining:

---

92.    *Id*. at *3 (citations omitted). *Accord Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. Ct. App. 1998) ("[I]f a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the privilege created by this statute nor the work product privilege protects communications from a lawyer to an insurance carrier.").

93.    WASH. ADMIN. CODE § 284-30-330(13) (1978).

94.    *Compare* Cedell v. Farmers Ins. Co. of Wash., 295 P.3d 239, 247 (Wash. 2013) *with* 2008 WL 163669 at *3.

BIRK(DO NOT DELETE)                                                                6/6/2014 9:49 AM

516                     GONZAGA LAW REVIEW                     [Vol. 49:3

However, Farmers hired Hall to do more than give legal opinions. The record suggests that Hall assisted in the investigation. Hall took sworn statements from Cedell and a witness and corresponded with Cedell. Hall assisted in adjusting the claim by negotiating with Cedell. Seven months after the fire, Hall wrote to Cedell offering a 'one time offer' of $30,000, which was open for only 10 days, and threatened denial of coverage if the offer was not accepted. It was Hall who was negotiating with Cedell on behalf of Farmers and it was Hall who did not return his calls when Cedell was attempting to respond to the offer. While Hall may have advised Farmers as to the law and strategy, he also performed the functions of investigating, evaluating, negotiating, and processing the claim.[95]

The application of the attorney-client privilege to an insurance carrier's investigation is analogous to its application in other contexts. To establish that communications are protected by the attorney-client privilege, the party asserting the privilege must show, among other things, the existence of an attorney-client relationship.[96] When an attorney is hired to perform functions other than providing legal advice, such as performing a factual investigation, an attorney-client relationship is not formed for that purpose.[97] The lack of an attorney-client relationship forecloses application of the privilege. Similarly, to invoke the privilege, a party must show that the communications claimed as privileged were made in confidence.[98] Under Washington law, however, an insurance claim file is subject to examination by the Insurance Commissioner.[99] A document that is subject to disclosure to third parties is generally not protected by the attorney-client privilege.[100] And a document that reflects a business decision, even if made at a meeting attended by counsel and based in part on legal advice, is not

---

95.     *Cedell*, 295 P.3d at 247.

96.     Dietz v. Doe, 935 P.2d 611, 615 (Wash. 1997).

97.     Morgan v. City of Fed. Way, 213 P.3d 596, 600 (Wash. 2009) (attorney-client relationship not formed when attorney hired to perform factual investigation into complaints of discrimination, rather than to provide legal advice).

98.     Green v. Fuller, 294 P. 1037, 1039 (Wash. 1930) ("Only communications which are confidential are protected as privileged as between attorney and client. Those which the attorney in the discharge of his duty to his client is of necessity obliged to make public, or those which are made to him for that purpose, cannot be said to be confidential, and are therefore not privileged."); Seattle Nw. Sec. Corp. v. SDG Holding Co., 812 P.2d 488, 498 (Wash. Ct. App. 1991) ("The attorney-client privilege only applies to communications that are intended by the party to be confidential.").

99.     WASH. ADMIN. CODE § 284-30-340 (2014).

100.    Robertson v. Cent. Jersey Bank & Trust Co., 834 F. Supp. 705, 708 (D.N.J. 1993) ("a communication between an attorney and client will not be privileged if the communication was made with the understanding that it would be imparted to third parties").

BIRK (DO NOT DELETE)                                                    6/6/2014 9:49 AM

protected by the privilege.[101] An insurer's investigation and decision-making on a claim would normally be discoverable under all of these principles: it constitutes a factual investigation not occurring in an attorney-client relationship; it is subject to examination by the Insurance Commissioner; and it occurs in the ordinary course of business. An insurer's engagement of an attorney in this process does not change the analysis.

This much was known before *Cedell*. What *Cedell* adds to *HSS Enterprises* and similar cases is the presumption, based on the quasi-fiduciary duty owed to first party claimants, that the attorney-client privilege and work product doctrine do *not* apply. The presumption adopted by *Cedell* is consistent with—and gives effect to—the general rule that the party asserting the attorney-client privilege has the burden of establishing that it applies.[102] *Cedell* clarifies that when the insurer invokes the attorney-client privilege to withhold portions of the claim file, it is the insurer that bears the burden of demonstrating factually that "its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability."[103] If the insurer succeeds in making this showing, then, consistent with the narrow scope of the privilege, it may be entitled to "the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company."[104]

Cases applying *Cedell* demonstrate the *Cedell* presumption at work. In *Hilborn v. Metro. Grp. Prop. & Cas. Ins. Co.*, applying *Cedell* as persuasive authority on Idaho law, the court presumed that the insurer was required to produce its entire claim file where its counsel "was retained by [the insurer] to assist it in its coverage investigation and determination," and counsel placed a phone call to authorities present at the scene of a fire "as part of the ongoing claims investigation."[105] The court concluded that counsel and his law firm "were engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim."[106] In contrast, the insurer overcame the presumption in *Shaw Group, Inc. v. Zurich Am. Ins. Co.*, in which the Shaw Group asserted claims against its insurer arising out of an underlying action involving Shaw.[107] When Shaw sought

---

101.  Kammerer v. W. Gear Corp., 618 P.2d 1330, 1334–35 (Wash. Ct. App. 1980), *aff'd*, 635 P.2d 708 (Wash. 1981).

102.  Soter v. Cowles Publ'g Co., 174 P.3d 60, 76 (Wash. 2007).

103.  Cedell v. Farmers Ins. Co. of Wash., 295 P.3d 239, 246 (Wash. 2013).

104.  *Id.*

105.  No. 2:12-cv-00636-BLW, 2013 WL 6055215, at *3 (D. Idaho Nov. 15, 2013).

106.  *Id.* The court went on to give the insurer the opportunity to attempt to show, *in camera*, that portions of the claim file "related only to providing [the insurer] with counsel as to its own potential liability." *Id.*

107.  No. 12-257-JJP-RLB, 2014 WL 199626 at *1 (M.D. La. Jan. 15, 2014).

BIRK(DO NOT DELETE)                                                                        6/6/2014 9:49 AM

518                    GONZAGA LAW REVIEW                    [Vol. 49:3

to depose an in-house attorney with the insurer, the court, applying Washington law, found that *Cedell* would not support a deposition of the attorney "[i]f his personal involvement was limited to privileged communications and work product regarding litigation strategy *in defending Shaw's lawsuit against Zurich*."[108] When the insurer cannot "overcome the presumption of disclosure based upon a showing that [counsel] was not engaged in quasi-fiduciary activities," the *Cedell* presumption that the entire claim file is discoverable controls.[109]

### 3. Co-mingling quasi-fiduciary tasks and counseling the insurer

*Cedell* recognizes that in some cases, attorneys may be involved in both quasi-fiduciary tasks and providing counsel to the insurer. The court noted: "[w]here an attorney is acting in more than one role, insurers may wish to set up and maintain separate files so as not to co-mingle different functions."[110] Other courts have observed that "[t]he line between what constitutes claim handling and the rendition of legal advice is often more cloudy than crystalline."[111] One court has questioned the practical ability of an insurer to separate its files in this manner.[112] However, the potential that an insurer may co-mingle its quasi-fiduciary tasks (which are discoverable) with its counsel's legal advice (which may or may not be discoverable) supports, as a policy matter, the burden that the *Cedell* presumption imposes on the insurer.

The problem of an attorney performing dual roles such as carrying out ordinary business functions and providing legal advice is the subject of well-developed law pertaining to in-house counsel. Because the attorney-client privilege does not protect communications made for some "other purpose than communicating with an attorney,"[113] it generally will not protect communications with in-house counsel to the extent that in-house counsel is involved in ordinary business functions. While the privilege is not diluted merely because of an attorney's in-house status, when in-house counsel has responsibilities "outside the

---

108.   *Id.* at *2 (emphasis added).

109.   *Cedell*, 295 P.3d at 247.

110.   *Id.* at 246 n.5.

111.   HSS Enters. v. Amco Ins. Co., No. C06-1485-JPD, 2008 WL 163669 at *3 (W.D. Wash. Jan. 14, 2008).

112.   Palmer v. Sentinel Ins. Co. Ltd., No. C12-5444 BHS, 2013 WL 3448128, at *2 (W.D. Wash. July 9, 2013) ("The *Cedell* court's suggestion will likely *not* provide a practical solution for many attorneys working in dual capacities because the file containing counsel's legal advice is very likely to contain the mental impressions directly at issue in the information contained in the other file where the attorney stores the information gathered in the course of executing his or her quasi-fiduciary duties." (emphasis original)).

113.   Hangartner v. City of Seattle, 90 P.3d 26, 32 (Wash. 2004).

BIRK (DO NOT DELETE)                                                                6/6/2014 9:49 AM

2013/14]              THE *CEDELL* PRESUMPTION              519

lawyer's sphere," a party asserting the privilege is required to make a "clear showing" that any advice it seeks to protect was given in a legal, not business, capacity.[114] The need to apply the privilege "cautiously and narrowly" is therefore "heightened" in the case of corporate staff counsel.[115] In *In re Vioxx Prods. Liability Litig.*, the court noted:

> Many courts fear that businesses will immunize internal communications from discovery by placing legal counsel in strategic corporate positions and funneling documents through counsel . . . . As a result, courts require a clear showing that the attorney was acting in his professional legal capacity before cloaking documents in the privilege's protection.[116]

In *Vioxx*, the court appointed a special master to analyze a drug manufacturer's claims of privilege.[117] The special master cautioned against permitting broad claims of privilege where business functions were delegated to counsel, in which case

> the role of legal counsel would change from *legal advisor* to corporate *decision-maker*. This is a role that the corporation does not have the right to delegate to attorneys and then insist that the decisions they make are immune from discovery . . . . As the Court noted in *United States v. Freeman*, 619 F.2d 1112, 1119–20 (5th Cir. 1980), "[a]n attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction." This cannot be gotten around by the simple expedient of putting a lawyer in the shoes of the executive or, as Merck has done, giving the legal department the power of the corporate executive.[118]

The holding of *Cedell* is analogous to, and consistent with, these principles. The insurer's responsibility to investigate a claim arises under the insurance contract and applicable law.[119] The investigation forms part of the ordinary course of business.[120] Thus, when an insurer co-mingles its quasi-fiduciary

---

114.   In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).

115.   Rossi v. Blue Cross & Blue Shield, 540 N.E.2d 703, 705 (N.Y. 1989).

116.   501 F. Supp. 2d 789, 797 (E.D. La. 2007) (quoting PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 7:2, pp. 24–25 (Thomson West 2d ed. 1999)).

117.   *Vioxx*, 501 F. Supp. 2d at 789.

118.   *Id*. at 804–05.

119.   Coventry Assocs. v. Am. States Ins. Co., 961 P.2d 933, 938 (Wash. 1998).

120.   HSS Enters. v. Amco Ins. Co., No. C06-1485-JPD, 2008 WL 163669, at *3 ("[T]he question of whether a communication falls within the attorney-client privilege can often be a difficult one because of the investigatory nature of the insurance business.").

BIRK(DO NOT DELETE)                                                          6/6/2014 9:49 AM

520                    GONZAGA LAW REVIEW                    [Vol. 49:3

responsibilities to the insured with its own legal consultations, the insurer necessarily co-mingles activities that would not normally be protected by the privilege with consultations that otherwise might be protected. As shown above, it is the general law of the attorney-client privilege that when a party co-mingles ordinary business functions with legal consultations, courts require a clear showing to invoke the privilege, and apply heightened scrutiny to claims of privilege, because of the danger that "businesses will immunize internal communications from discovery by placing legal counsel in strategic corporate positions."[121] The same considerations apply when an insurer has involved its counsel in its quasi-fiduciary responsibilities to its insured.

The *Cedell* presumption, which requires the insurer to establish that an attorney was not engaged in quasi-fiduciary tasks, gives effect to these principles in the insurance context. The first court to grapple with counsel engaged in dual roles after *Cedell* was *Stewart Title Guar. Co. v. Credit Suisse*,[122] in which the court adopted *Cedell* as persuasive authority on Idaho law. In *Stewart Title*, a lender foreclosing on a commercial development tendered competing lien claims to its insurer.[123] The insurer retained counsel to defend the lender's interest and also retained its own counsel "to do 'a complete analysis from the beginning of whether the lien claims were valid,'" among other things.[124] The insurer's counsel worked "closely" with appointed defense counsel and at the same time "were also evaluating for [the insurer] whether [the insured] was covered."[125] Analogizing to the joint client exception to the attorney-client privilege, which Idaho recognized and under which communications with both counsel pertaining to the defense were discoverable, the court concluded that the Idaho Supreme Court would apply *Cedell*.[126] The court found discoverable "[a]ll documents dealing with the factual investigation of the lien claims" and "[d]ocuments that discuss both coverage and factual matters," though any coverage discussion could be redacted "if it has nothing to do with the bad faith claim."[127] While it may be true that there are practical limitations on an insurer's ability to protect consultations with counsel that it has involved in its quasi-fiduciary responsibilities to its insured as noted in *Palmer v. Sentinel Ins. Co. Ltd.*, *Stewart Title* demonstrates that this follows as a consequence of co-mingling the functions.

---

121.   In re Vioxx Prods. Liab. Litig., 501 F. Supp. 2d 789, 797 (E.D. La. 2007).
122.   No. 1:11-CV-227-BLW, 2013 WL 1385264 (D. Idaho April 3, 2013).
123.   *Id*. at *1.
124.   *Id*. at *2.
125.   *Id*.
126.   *Id*. at *5.
127.   *Id*. at *6.

BIRK (DO NOT DELETE)                                    6/6/2014 9:49 AM

2013/14]                THE *CEDELL* PRESUMPTION                    521

### 4. *Cedell* in third party and UIM settings

In the third party context, *Cedell* applies in favor of an insured defendant. In this context, the insured is generally a defendant who has been sued by a third party claimant and who looks to a liability carrier for coverage and defense. With respect to the insurance policy, a defendant making such a claim for coverage and defense is a first party claimant. In *Carolina Cas. Ins. Co. v. Omeros Corp.*, the insured asserted coverage and bad faith claims against its insurer arising from the insurer's handling of the insured's tender of defense of a claim made against the insured.[128] The insurer argued that *Cedell* did not apply, because the claim against the insured was a third party claim.[129] The court rejected this argument, reasoning that *Cedell* "grounded its ruling in the quasi-fiduciary duty of an insurer to its insured, along with the public policy interest in regulating the business of insurance."[130] The court found that these principles applied equally in the context of third party coverage.[131] As a result, the court applied *Cedell* to the insured's claim for coverage.[132] The court likewise applied *Cedell* in a bad faith claim arising in a third party context in *Everest Indemnity*.[133] In similar fashion, in *Stewart Title*, the court applied *Cedell* to the insured's tender of defense of lien claims asserted against property in which the insured held a competing security interest.[134] Thus, while *Cedell* is concerned with the interest of a first party claimant on an insurance policy, it applies in the third party context to the claim for coverage made by an insured that is the subject of a third party claim. The insured's interest, moreover, may be assigned. When an insured assigns its rights to another, such as when an insured defendant assigns its rights to a third party claimant, the assignment generally includes the insured's rights with respect to the insurer's claims of privilege.[135]

The *Cedell* presumption does not apply in UIM claims. This is because in the UIM context, the insurer may reasonably assert any defenses against the insured's claim that would have been available to the uninsured or underinsured tortfeasor. The court explained:

---

128.  No. C12-287RAJ, 2013 WL 1561963, at *1 (W.D. Wash. April 12, 2013).

129.  *Id.* at *3.

130.  *Id.*

131.  *Id.* at *2.

132.  *Id.*

133.  No. 2:13-cv-00828-RSM, 2013 WL 5885277, at *5 (W.D. Wash. Oct. 31, 2013) ("[T]his Court has found *Cedell* applicable to third party bad faith actions.").

134.  Stewart Title Guar. Co. v. Credit Suisse, No. 1:11-CV-227-BLW, 2013 WL 1385264 at *4 (D. Idaho Apr. 3, 2013).

135.  Lexington Ins. Co. v. Swanson, 240 F.R.D. 662, 667 (W.D. Wash. 2007).

BIRK(DO NOT DELETE)                                           6/6/2014 9:49 AM

> [W]e recognize a difference between UIM bad faith claims and other first party bad faith claims. The UIM insurer steps into the shoes of the tortfeasor and may defend as the tortfeasor would defend. Thus, in the UIM context, the insurance company is entitled to counsel's advice in strategizing the same defenses that the tortfeasor could have asserted.[136]

Thus, the court concluded, "in first party UIM claims, there is no presumption of waiver by the insurer of the attorney-client privilege."[137] But the court left open the possibility that the insured could still pierce the privilege in UIM cases, discussion of which follows below.

## B. *Piercing the Attorney-Client Privilege*

The *Cedell* presumption applies in determining whether an insurer may appropriately claim the protection of the attorney-client privilege at all. If the insurer fails to establish that its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, then the entire claim file must be disclosed. But if the insurer establishes that the privilege applies, the next inquiry is whether an exception to the privilege nevertheless compels disclosure. *Cedell* identifies two exceptions to the privilege relevant to an insurance claim file: (1) the crime-fraud exception, and (2) an exception for when an attorney's mental impressions are "at issue."[138]

### 1. The crime-fraud exception to the attorney-client privilege in insurance bad faith actions

Washington courts "have for years held that the privilege does not protect communications in furtherance of a crime or fraud."[139] As early as 1899, the Washington Supreme Court recognized that the rule "is well settled that communications made to counsel in contemplation of fraud or a criminal act are not privileged."[140] An insured may invoke this rule in bad faith litigation to pierce the insurer's attorney-client privilege. *Cedell* holds that the attorney-client privilege is deemed waived "upon a finding there is a foundation to permit a claim of bad faith to proceed."[141] While the court split five–four on whether to

136.   Cedell v. Farmers Ins. Co. of Wash., 295 P.3d 239, 245 (Wash. 2013).
137.   *Id*. at 247.
138.   295 P.3d at 247.
139.   KARL B. TEGLAND, WASHINGTON PRACTICE SERIES: EVIDENCE LAW AND PRACTICE § 501.20 (5th ed. 2013).
140.   Hartness v. Brown, 59 P. 491, 495 (Wash. 1899).
141.   295 P.3d at 247.

BIRK (DO NOT DELETE)                                                           6/6/2014 9:49 AM

adopt the presumption discussed in part IV.A above, the court was unanimous that a foundation for bad faith—rather than the nine elements of fraud—suffices to pierce the privilege.[142] This departs from earlier decisions of the court of appeals, including the court of appeals decision in *Cedell*, which held that a showing of actual fraud was required.[143]

Washington courts first addressed the crime-fraud exception in the bad faith context in *Escalante v. Sentry Ins.*,[144] a UIM case. In *Escalante*, the UIM insured was killed in a car accident while riding as a passenger in a vehicle owned and insured by another.[145] The policy covering the vehicle included an endorsement stating: "Anyone occupying with your permission, a car we insure has the same rights and obligations that you have under this insurance."[146] Despite this, the insurer repeatedly declined to extend benefits, suggesting among other things that the claimant's estate look to the claimant's own insurance policy.[147] The estate served interrogatories seeking information concerning the insurer's evaluation of the claim, to which the insurer objected on grounds of privilege.[148] The court of appeals noted that the crime-fraud exception to the privilege had been recognized in bad faith actions in other jurisdictions, but the court said, "is usually invoked only upon a prima facie showing of bad faith tantamount to civil fraud."[149] Finding that in pretrial discovery, a lower "foundation in fact" standard was proper rather than a "prima facie showing," the *Escalante* court remanded for the trial court to "determine whether the attorney-client privilege applies to particular discovery requests, and whether appellants have overcome that privilege by showing a foundation in fact for the charge of civil fraud."[150] With *Escalante*, therefore, Washington adopted the crime-fraud exception to the attorney-client privilege in bad faith cases, but the court's use of the phrase "bad faith tantamount to civil fraud" left doubt as to whether piercing the privilege required a showing only of bad faith or of actual fraud.[151]

The court of appeals next addressed the crime-fraud exception in a bad faith case in *Barry v. USAA*, another UIM case. In *Barry*, the court described the

---

142.    *See id.* at 251-52 (Alexander, J., dissenting).

143.    *See, e.g.,* Cedell v. Farmers Ins. Co. of Washington, 237 P.3d 309, 316 (Wash. Ct. App 2010), *aff'd in part, rev'd in part*, 295 P.3d 239 (Wash. 2013).

144.    743 P.2d 832, 842 (Wash. Ct. App. 1987), *overruled on other grounds by* Ellwein v. Hartford Accident & Indem. Co., 15 P.3d 640 (Wash. 2001).

145.    *Escalante*, 743 P.2d at 834.

146.    *Id.* (emphasis omitted).

147.    *Id.* at 834-35.

148.    *Id.* at 842.

149.    *Id.*

150.    *Id.* at 843.

151.    *Id.* at 842-43.

BIRK(DO NOT DELETE)                                                        6/6/2014 9:49 AM

524                  GONZAGA LAW REVIEW                [Vol. 49:3

*Escalante* analysis as a two-step process:

> First, the court determines whether there is a factual showing adequate
> to support a good faith belief by a reasonable person that wrongful
> conduct sufficient to evoke the fraud exception has occurred . . . .
> Second, if so, the court subjects the documents to an in camera
> inspection to determine whether there is a foundation in fact for the
> charge of civil fraud.[152]

The *Barry* court determined that the claimant set forth grounds for a bad faith
claim in the form of an inadequate investigation, failing to engage in good faith
efforts to settle, and delay, but not fraud.[153] The court explained:

> While [Barry's] allegations may be sufficiently supported by the
> record to establish a prima facie case of bad faith insurance and CPA
> violations, they do not, in and of themselves, constitute a good faith
> belief that USAA committed fraud.[154]

Accordingly, the court found that the trial court did not abuse its discretion in
declining to review the insurer's claim file *in camera*.[155] To the extent *Barry* did
not settle the question, the court of appeals opinion in *Cedell* was explicit,
holding: "[t]o qualify for the fraud exception to attorney-client privilege, the
plaintiff must show fraud, as opposed to just bad faith."[156]
     In *Cedell*, however, the Washington Supreme Court held that the privilege is
pierced upon "a foundation to permit a claim of bad faith to proceed."[157] With
reference to *Barry*, the court explained: "there is no reason to limit the grounds
for piercing the privilege in the UIM context to civil fraud; it was merely the
particular grounds at issue in that case."[158] The court grounded its holding in the
policy rationale of the insured's need for the evidence that permeates the opinion:
"[s]ince conduct short of fraud constitutes bad faith, requiring a threshold
showing of fraud to reach critical evidence requires too much."[159] Thus, in
Washington, where a foundation exists for allowing a bad faith claim to proceed,

---

152.    Barry v. USAA, 989 P.2d 1172, 1176 (Wash. Ct. App. 1999).
153.    *Id*. at 1176-77.
154.    *Id*. at 1177.
155.    *Id*.
156.    Cedell v. Farmers Ins. Co. of Washington, 237 P.3d 309, 315 (Wash. Ct. App.
2010), *aff'd in part, rev'd in part*, 295 P.3d 239 (Wash. 2013).
157.    295 P.3d at 247.
158.    *Id*. at 245 n.4.
159.    *Id*.

2013/14]                 THE *CEDELL* PRESUMPTION                 525

the insurer's attorney-client privilege is deemed waived.[160]

In his *Cedell* dissent, Justice Alexander agreed with the majority that the privilege is pierced upon a foundation of bad faith, though he dissented from the *Cedell* presumption in favor of first party claimants.[161] Analyzing the scope of the crime-fraud exception in bad faith cases, Justice Alexander concluded that a showing of bad faith is sufficient to pierce the privilege:

> Engaging an attorney in order to further the bad faith denial of insurance coverage represents an abuse of the attorney-client privilege. We should hold, therefore, that communications related to an attorney's aiding an ongoing or future commission of bad faith by an insurer are discoverable if an in camera inspection reveals a foundation in fact of such wrongful conduct, provided that the party seeking disclosure first makes a factual showing adequate to support a good faith belief by a reasonable person that such conduct has occurred.[162]

The court therefore was unanimous in concluding that a showing of bad faith is sufficient to pierce the privilege.[163]

---

160. In spite of the court's explicit statement tying disclosure to a foundation for bad faith, *Philadelphia Indemnity* suggested that elsewhere in the opinion, the court referred to bad faith "tantamount to civil fraud." Philadelphia Indem. Ins. Co. v. Olympia Early Learning Ctr., No. C12-5759 RBL, 2013 WL 3338503, at *4 (W.D. Wash. July 2, 2013). In each such instance, however, the *Cedell* majority did so only in the context of describing the law as set forth in *Escalante* and *Barry*. *E.g.*. *Cedell*, 295 P.3d at 246 ("*Escalante* suggests if an insurer engages in bad faith in an attempt to defeat a meritorious claim, bad faith was tantamount to civil fraud."). Moreover, *Philadelphia Indemnity* did not address *Cedell*'s explicit rejection of the fraud standard in footnote four of the majority opinion, nor the dissent's agreement that the standard should be tied to bad faith, rather than fraud.

161. *Cedell*, 295 P.3d at 249–50 (Alexander, J., dissenting) ("we should hold that an insurer is entitled to the attorney-client privilege in a bad faith action by a first-party insured in the absence of an applicable exception to the privilege").

162. *Id*. at 251; *see also id*. at 252 (Alexander, J., dissenting) ("[W]e should . . . reverse [the Court of Appeals'] holding that the fraud exception to the attorney-client privilege is limited to 'actual fraud.'").

163. Justice Alexander based his opinion in part on the conclusion that a "substantial minority" of jurisdictions recognize an exception to the attorney-client privilege for communications intended to further "any crime or tort." *Id*. at 251 (Alexander, J., dissenting). Cases dealing specifically with the issue in the bad faith context include: Hutchinson v. Farm Family Cas. Ins. Co., 867 A.2d 1, 6–7 (Conn. 2005) (Privilege does not apply "when a communication was made for the purpose of evading a legal or contractual obligation to an insured without reasonable justification."); W. Va. *ex rel*. Allstate Ins. Co. v. Madden, 601 S.E.2d 25, 39 (W. Va. 2004) (bad faith defenses to coverage constitutes civil fraud vitiating attorney-client privilege); Boone v. Vanliner Ins. Co., 744 N.E.2d 154, 157 (Ohio 2001) (communications showing lack of good faith undeserving of protection); Central Constr. Co. v. Home Indem. Co., 794 P.2d 595, 598 (Alaska 1990) (services in aid of

BIRK(DO NOT DELETE)                                                      6/6/2014 9:49 AM

526                 GONZAGA LAW REVIEW              [Vol. 49:3

2.  Attorney's mental impressions at issue

*Cedell* recognizes an exception to the attorney-client privilege when an attorney's mental impressions are "at issue."[164] This rule has been stated in the work product context as follows: "In a bad faith insurance claim settlement case, the strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue."[165] When an attorney's mental impressions are at issue, they may be required to be disclosed in discovery even if they would otherwise be protected work product.[166] In *Hilborn*, the court applied the "at issue" exception to the federal work product rule in a bad faith case, while also applying *Cedell*, in concluding that the work product rule did not overcome *Cedell's* broad rule in favor of discovery.[167]

Some insurance bad faith cases provoke the "at issue" exception implicitly. Even when a party disclaims reliance on a formal advice-of-counsel defense (which generally waives the attorney-client privilege), a party can place its attorney's advice at issue by relying on it implicitly. As one court has explained:

> The question before us is whether, having alleged that its actions were objectively and subjectively reasonable and in good faith based on its evaluation of the law—an evaluation that included advice of counsel, State Farm may then raise the privilege as a bar to prevent discovery of the information in the possession of its employees and managers when they made the subjective determination and concluded that the law permitted them to reject Plaintiffs' claims. Of course, State Farm is not liable for bad faith just because hindsight shows its employees were wrong. On the other hand, State Farm is liable for bad faith if the evidence shows its employees could not or did not reasonably believe that the first-party stacking claims could be rejected within the bounds of the law . . . . The information in question is very relevant and material—what information could be more important to determining what these employees and managers actually knew and reasonably

---

"*bad faith breach* of a duty are not protected" (emphasis original)); Zurich Ins. Co. v. State Farm Mut. Auto. Ins. Co., 524 N.Y.S.2d 202, 203 (N.Y. App. Div. 1988) (allegation of breach of insurer's fiduciary duty vitiates privilege); *but see* Freedom Trust v. Chubb Grp. of Ins. Cos., 38 F. Supp. 2d 1170, 1173 (C.D. Cal. 1999) (predicting California would not extend crime-fraud exception to bad faith based on statute); Montana *ex rel*. United States Fid. & Guar. Co. v. Montana Second Judicial Dist., 783 P.2d 911, 916 (Mont. 1989) (same).

    164.  295 P.3d at 246.

    165.  Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992) (quotation omitted).

    166.  Pappas v. Holloway, 787 P.2d 30, 38 (Wash. 1990) (mental impressions "central to a party's claim or defense" discoverable).

    167.  Hilborn v. Metro. Grp. Prop. & Cas. Ins. Co., No. 2:12-cv-006360BLW, 2013 WL 6055215, at *3–*4 (D. Idaho Nov. 15, 2013).

BIRK (DO NOT DELETE)                                                    6/6/2014 9:49 AM

2013/14]                 THE *CEDELL* PRESUMPTION                      527

believed than the advice they obtained from counsel with respect to the validity of stacking claims? But there is more than relevance and materiality needed to find a waiver, for communications with counsel are almost always very relevant and material. We conclude that under the *Hearn* test, in cases such as this in which the litigant claiming the privilege relies on and advances as a claim or defense a subjective and allegedly reasonable evaluation of the law—but an evaluation that necessarily incorporates what the litigant learned from its lawyer—the communication is discoverable and admissible.[168]

Waiver in this manner is not automatic. In *Lexington Ins. Co. v. Swanson*, a Washington federal court determined that, in a bad faith case, Washington applies a three-part test to analyze waiver:

(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to his defense.[169]

When an insurer co-mingles its quasi-fiduciary responsibilities to the insured with legal consultations, there will be a risk of waiver if the insurer later defends on the basis that its evaluation was reasonable if the evaluation necessarily incorporated input from legal counsel. Waiver in this circumstance is a species of waiver through selective disclosure.[170] A party may not use the privilege "as both a sword and a shield."[171]

### C. *Work Product*

*Cedell* focuses on the attorney-client privilege but addresses the work product doctrine tangentially. In *Philadelphia Indemnity*, the court concluded that under *Cedell*, when the attorney-client privilege is pierced, work product

---

168.  State Farm Mut. Auto. Ins. Co. v. Lee, 13 P.3d 1169, 1174–75 (Ariz. 2000) (footnote omitted).

169.  240 F.R.D. 662, 670 (W.D. Wash. 2007).

170.  Lexington Ins. Co. v. Swanson, No. C05-1614MJP, 2007 WL 2121730, at *4 (W.D. Wash. July 24, 2007) ("If [the insurer] asserts as a defense the actual advice given by [the insurer's] attorneys to [the insurer], *or* if [the insurer] refers to or attempts to put into evidence any suggestion that [the insurer's] adjusters sought, obtained, or relied on coverage counsel's advice, [the insurer] waives the privilege.").

171.  *Id.*

BIRK(DO NOT DELETE)                                                                          6/6/2014 9:49 AM

protection is deemed waived also.[172] With respect to the claim file, the two most important limitations on the work product doctrine are that the doctrine does not apply to documents created in the ordinary course of business and there is a *substantial need exception* to the rule. In contrast to the attorney-client privilege, which forms part of a state's substantive law, the work product doctrine is a procedural immunity.[173] As a result, in Washington state court, the work product doctrine is analyzed under CR 26, whereas in federal court, federal law controls.[174]

### 1. Claim file documents created in the ordinary course of business are not work product.

"It is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation."[175] In *Front Royal Ins. Co. v. Gold Players, Inc.*,[176] the insurer asserted that its investigation of a fire loss was immune from discovery because it was made in anticipation of litigation. The court rejected this argument, because insurers are required to investigate claims in the ordinary course of business.[177] Even where attorneys are involved, "normal communications between parties with a contractual obligation to keep each other informed" are not protected.[178] The court rejected a similar work product claim in *Stout v. Illinois Farmers Ins. Co.*,[179] holding that documents for use in a claims decision are not work product because the claims decision represents the ordinary course of business. The court explained that documentation used "in evaluating the claim" to arrive at the "correct claims decision" is not work product.[180]

Courts recognize a distinction between first party and third party claims in the work product analysis. As several federal courts have noted:

---

172.   Phila. Indem. Ins. Co. v. Olympia Early Learning Ctr., No. C12-5759 RBL, 2013 WL 3338503, at *4 n.7 (W.D. Wash. July 2, 2013).

173.   HSS Enters. v. Amco Ins. Co., No. C06-1485-JPD, 2008 WL 163669, at *3 (W.D. Wash. Jan. 14, 2008) (citing Union Pac. R.R. Co. v. Mower, 219 F.3d 1069, 1076 n.8 (9th Cir. 2000)).

174.   *Id*. (citing United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 966 (3rd Cir. 1988)).

175.   Heath v. F/V ZOLOTOI, 221 F.R.D. 545, 550 (W.D. Wash. 2004).

176.   Front Royal Ins. Co. v. Gold Players, Inc., 187 F.R.D. 252, 256 (W.D. Va. 1999).

177.   *Id*. at 257.

178.   *Id*. at 258 (citing Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D. 132, 141 (N.D. Ill. 1993)).

179.   150 F.R.D. 594, 594 (S.D. Ind. 1993).

180.   *Id*. at 598.

Birk (Do Not Delete)                                                    6/6/2014 9:49 AM

2013/14]            THE *CEDELL* PRESUMPTION            529

[W]hen a liability insurer investigates a third party claim, the investigation is made in anticipation of claims, which, if denied, likely will lead to litigation. For this reason it is logical to conclude that, while files generated in relation to first party claims are made in the ordinary course of business and are discoverable, files generated during the investigation of third party claims are made in anticipation of litigation and are not discoverable.[181]

In Washington, this rule is established in *Heidebrink v. Moriwaki*. There, the court held that the statements of an insured defendant made to the defendant's liability insurance carrier were protected work product as against the third party claimant.[182]

### 2. The substantial need exception

"'Substantial need' . . . means that the information is vital to the preparation of the party's case."[183] To show substantial need, a party must show that the information requested cannot be secured from another source "without undue hardship."[184] In *Heidebrink*, the Washington Supreme Court explained:

Cases interpreting Fed. R. Civ. P. 26(b)(3) have generally held that to justify disclosure, a party must show the importance of the information to the preparation of his case and the difficulty the party will face in obtaining substantially equivalent information from other sources if production is denied . . . . The clearest case for ordering production is when crucial information is in the exclusive control of the opposing party.[185]

Courts have relied on the substantial need exception to require production of such documents as records of similar incidents to that alleged in a plaintiff's complaint,[186] documents held by other parties who were involved in a transaction

---

181. Underwriters Ins. Co. v. Atlanta Gas Light Co., 248 F.R.D. 663, 668 (N.D. Ga. 2008) (quoting Taylor v. Temple & Cutler, 192 F.R.D. 552, 558 (E.D. Mich. 1999) (quoting Weitzman v. Blazing Pedals, Inc., 151 F.R.D. 125, 126 (D. Colo. 1993) (internal citations omitted)).

182. 706 P.2d 212, 217 (Wash. 1985) ("[W]e hold that a statement made by an insured to an insurer following an automobile accident is protected from discovery under CR 26(b)(3).").

183. Soter v. Cowles Pub. Co., 130 P.3d 840, 847 (Wash. Ct. App. 2006) (citing *Heidebrink*, 706 P.2d 212 (Wash. 1985)).

184. Fed. R. Civ. P. 26(b)(3)(A)(ii); CR 26 (b)(4).

185. *Heidebrink*, 706 P.2d at 217.

186. Demelash v. Ross Stores, Inc., 20 P.3d 447, 453-54 (Wash. Ct. App. 2001) (records of other shoplifting incidents at retail store).

BIRK(DO NOT DELETE)                                                                6/6/2014 9:49 AM

over which a defendant has been sued,[187] and investigation reports that other parties cannot substantially recreate.[188]

In *Philadelphia Indemnity*, the court observed that presumably few cases applying *Cedell* will need to reach the question of substantial need.[189] *Cedell* holds that the insured must have access to the file of the insurer to discover facts relating to a bad faith claim.[190] Under the terms of *Cedell*, where an insured has established a foundation to permit a bad faith claim to proceed, the attorney-client privilege is deemed waived.[191] As a consequence, *Philadelphia Indemnity* described as a "presumably narrow and rare category" the set of documents consisting of:

> work product evidence for which an insured does [have] a substantial need to advance his bad faith claims, but which is simultaneously insufficient to meet the *Cedell* test of a "foundation to permit a claim of bad faith to proceed."[192]

Given the liberal discovery afforded by *Cedell*, and the fact that insurance claim files are generally created in the ordinary course of business to begin with, few documents are likely to have their discoverability turn on the substantial need rule.

A number of courts have held that an insurance claim file should be produced under the substantial need rule in bad faith cases.[193] In *Brown v. Superior Court In. & For Maricopa Cnty.*,[194] a fire loss case, the court first concluded that the work product doctrine would not protect claims file documents prepared through the date of a reservation of rights letter reserving the insurer's right to deny the claim based on misrepresentation, and then went on to analyze the remainder of the claim file for substantial need. The court held:

---

187. Pappas v. Holloway, 787 P.2d 30, 38 (Wash. 1990) (attorney accused by client of malpractice was entitled to discover work product of other attorneys who represented client in same matter).

188. Lamitie v. Emerson Electric Co., 617 N.Y.S.2d 924, 926 (App. Div. 1994) (fire investigation report created before site of the fire was substantially altered).

189. Phila. Indem. Ins. Co. v. Olympia Early Learning Ctr., No. C12-5759 RBL, 2013 WL 3338503, at *6 (W.D. Wash. July 2, 2013).

190. Cedell v. Farmers Ins. Co. of Wash., 295 P.3d 239, 245 (Wash. 2013).

191. *Id*. at 247.

192. *Phila*. *Indem*., 2013 WL 3338503, at *6 (quoting *Cedell*, 295 P.3d at 247).

193. *E.g*., Camacho v. Nationwide Mut. Ins. Co., 287 F.R.D. 688, 695 (N.D. Ga. 2012) ("[T]he documents in the file are often the only reliable indication of whether the insurance company acted in bad faith.").

194. 670 P.2d 725, 733-34 (Ariz. 1983).

BIRK (DO NOT DELETE)                                                    6/6/2014 9:49 AM

2013/14]              THE *CEDELL* PRESUMPTION              531

> [B]ad-faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming.[195]

Often starting from *Brown*, courts have looked to a variety of circumstances in analyzing substantial need with respect to a claim file. Under traditional work product principles, the court may still protect an attorney's mental impressions from disclosure assuming they are not at issue.[196] A court may also determine that substantial need does not exist when the insured can obtain the substantial equivalent of the requested materials through portions of the claim file that are produced voluntarily or through depositions (though such may be difficult to determine in the absence of *in camera* review).[197] Another court refused work product protection to the claim file up until the point when a claim is paid, denied, or limits tendered, while holding that an insured would not need access to materials generated after that time.[198] But in many cases, such a definitive date may be difficult or impossible to identify. In *Underwriters Ins. Co. v. Atlanta Gas Light Co.*,[199] the court determined that it did not need to decide when the work product doctrine became applicable because it found that substantial need was established. Determination of whether substantial need exists for portions of a claim file whose discoverability is not otherwise answered by application of *Cedell* will turn on a case-by-case analysis.

### D.  In Camera *Review*

> When an insurer seeks to withhold part of the claim file, it must first "overcome the presumption of disclosure based upon a showing that [counsel] was not engaged in quasi-fiduciary activities."[200] If the insurer overcomes the presumption, it may withhold portions of the claim file if there is not a basis for piercing the privilege.[201] In order to preserve any protection that may exist for the

---

195. *Id.* at 734.

196. *Id.* at 735-36.

197. *See* Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 173 F.R.D. 7, 16 (D. Mass. 1997).

198. Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos., 123 F.R.D. 198, 204 (M.D.N.C. 1988).

199. 248 F.R.D. 663, 667-68, 669 (N.D. Ga. 2008).

200. *Cedell*, 295 P.3d at 247.

201. *Id.* at 246.

BIRK(DO NOT DELETE)                                                                 6/6/2014 9:49 AM

documents when an insurer seeks to establish a right to withhold them from disclosure, *Cedell* adopts *in camera* review as the appropriate procedure.[202]

Washington courts have approved *in camera* review "as 'a generally acknowledged device for determining whether a privilege is to be honored.'"[203] Washington rejects the proposition that "a litigant alone can decide that certain materials are privileged and not subject to disclosure."[204] Before *Cedell*, the *in camera* review procedure applied in insurance cases when an insured sought to pierce the privilege under *Escalante* and *Barry*.

*Cedell* expands the purpose of *in camera* review. An insurer seeking to overcome the *Cedell* presumption does so "upon a showing in camera that the attorney was providing counsel to the insurer and not engaged in a quasi-fiduciary function."[205] The determination of whether the insurer can overcome the *Cedell* presumption determines whether the insurer is entitled to assert the attorney-client privilege.[206] If the insurer can overcome the presumption, the two-step process originally established in *Escalante* applies to determine whether the insured can nevertheless pierce the privilege.[207] Those steps are determining, first, whether "a reasonable person would have reasonable belief that an act of bad faith has occurred," and second, if so, whether "there is a foundation to permit a claim of bad faith to proceed."[208] When the insurer succeeds in establishing the privilege, it is entitled to "the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company."[209]

As *Philadelphia Indemnity* observes, *Cedell* can at least arguably be read to suggest two different *in camera* reviews—one to determine whether the *Cedell* presumption is overcome and another to determine whether the privilege is pierced.[210] Making multiple reviews, however, would be "cumbersome and unnecessary," where, instead, the court can determine the merits of each claim of protection from disclosure in a single review.[211] Courts applying *Cedell* have

202.  *Id*.
203.  Snedigar v. Hoddersen, 786 P.2d 781, 787 (Wash. 1990) (quoting State v. Allen, 615 P.2d 526, 530 (Wash. Ct. App. 1980)).
204.  *Snedigar*, 786 P.2d at 787.
205.  *Cedell*, 295 P.3d at 246.
206.  *Id*. at 247.
207.  *Id*.at 247; Escalante v. Sentry Ins., 743 P.2d 832, 842 (Wash. Ct. App. 1987).
208.  *Cedell*, 295 P.3d at 247.
209.  *Id*.
210.  Phila. Indem. Ins. Co. v. Olympia Early Learning Ctr., No. C12-5759 RBL, 2013 WL 3338503, at *4 (W.D. Wash. July 2, 2013).
211.  *Id*.

BIRK (DO NOT DELETE)                                                                    6/6/2014 9:49 AM

2013/14]              THE *CEDELL* PRESUMPTION                    533

made such unified reviews in *Palmer v. Sentinel Ins. Co. Ltd.*[212] and in *Stewart Title Guar. Co. v. Credit Suisse.*[213]

## V. CONCLUSION

*Cedell* is the leading case in Washington on the discovery of an insurance claim file in bad faith litigation. First, it creates a presumption that the insurer may not claim the attorney-client privilege as to the claim file against the insured. To overcome the presumption, the insurer must show that its attorney was not engaged in quasi-fiduciary tasks relating to the insurance claim. This rule is essentially a clarification of law that pre-existed *Cedell*. Before *Cedell*, the burden of establishing a privilege rested with the party asserting it. *Cedell* goes further and places the burden on the insurer of proving that an attorney involved in an insurance claim was not engaged in claims adjusting activities and was solely providing legal advice to the insurer. While no Washington case made this explicit before *Cedell*, the burden of overcoming the *Cedell* presumption is consistent with, and arguably implicit in, the well-settled rules that the privilege is narrow and that an insurer asserting the privilege has always had the burden of proving that it applies.

Second, *Cedell* joins a number of jurisdictions in holding that upon demonstration by the insured of a foundation for a bad faith claim to proceed, the attorney-client privilege is deemed waived. *Cedell* supports the conclusion that in Washington, an insurer that is the subject of a bad faith claim should expect to disclose to the insured the entire course of its handling of the underlying insurance claim, and will have only a very limited ability to claim that disclosure of its activities may be withheld from the insured based on the involvement of counsel in the claims process.

---

212.   Palmer v. Sentinel Ins. Co., No. C12-5444 BHS, 2013 WL 3819925, at *2 (W.D. Wash. July 23, 2013).
213.   Stewart Title Guar. Co. v. Credit Suisse, No. 1:11-cv-00227-BLW, 2013 WL 4446228, at *2 (D. Idaho Aug. 14, 2013).